IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

James L Williams,                    )
a/k/a Jamie Williams,                )
                                     )    Civil Action No. 8:13-cv-01563-JMC-JDA
                    Plaintiff,       )
                                     )    **REPORT AND RECOMMENDATION**
                                     )    **OF MAGISTRATE JUDGE**
           vs.                       )
                                     )
Carolyn W. Colvin,                   )
Commissioner of Social Security,     )
                                     )
                    Defendant.       )

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be AFFIRMED.

**PROCEDURAL HISTORY**

On April 28, 2010, Plaintiff protectively filed an application for DIB, alleging an onset of disability date of November 12, 2009. [R. 138–39.] The claim was denied initially on August 6, 2010 [R. 70–73] and was denied on reconsideration by the Social Security Administration ("the Administration") on October 26, 2010. [R. 75–81]. Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on August 23, 2011, ALJ Harold

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

Chambers conducted a de novo video hearing on Plaintiff's claims with Plaintiff appearing in Greenville, South Carolina, and the ALJ presiding over the hearing from Chattanooga, Tennessee.  [R. 34–64].

The ALJ issued a decision on October 7, 2011, finding that Plaintiff has not been under a disability as defined by the Social Security Act ("the Act") from November 12, 2009, through the date of the decision.  [R. 19–33.]  At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2014, and had not engaged in substantial gainful activity since November 12, 2009, the alleged onset date.  [R. 24, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: obesity, status post bilateral total knee replacement, degenerative disc disease of the lumbar spine, bilateral L4-5 stenosis and facet arthropathy, chronic pain of the low back with radiation to the left leg, and possible mild bilateral hip osteoarthritis.  [R. 24, Finding 3.]  At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 24, Finding 4.]  The ALJ specifically considered Listing 1.04 with respect to the Plaintiff's degenerative disc disease and Listing 1.02 with respect to the Plaintiff's status post bilateral knee replacements and possible hip osteoarthritis.  [R. 24–25.]  Although Plaintiff did not allege any mental impairment, the ALJ found him "moderately" limited under Listing 12.00 "paragraph B" criteria with respect to concentration, persistence, and pace due to his chronic pain and his requirement for narcotic pain medications.  [R. 24–25.]

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the

ALJ found Plaintiff retained

> the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a). I specifically find that the
> claimant has the sedentary work capacity to lift up to ten
> pounds occasionally; to lift or carry less than ten pounds
> frequently (e.g., file folders, small tools); to sit for six of eight
> hours; and to walk or stand for two of eight hours, all with
> normal breaks. The claimant must be allowed to exercise a
> sit-stand option (defined as follows: the claimant can sit or
> stand consistent with exertional limitations; cannot be off task
> more than 5% of the workday; cannot leave workstation except
> with normal breaks; can sit for up to thirty-minute time
> segments at any one time; can stand for up to ten-minute time
> segments at any one time; can walk for up to five-minute time
> segments at any one time, in order to relieve sitting and to
> perform the job requirements). The use of upper extremities to
> operate push or pull controls is limited as follows: occasionally
> bilaterally. The operation of foot controls is limited as follows:
> minimally bilaterally. The claimant cannot climb ladders, ropes,
> or scaffolds and can occasionally climb ramps and stairs, but
> with no more than four stairs at once, and with the use of a
> single hand rail. The claimant can occasionally balance or
> stoop and cannot crouch, kneel, or crawl. The claimant must
> avoid even moderate exposure to excessive vibration; must
> avoid even moderate exposure to extreme cold; and must
> avoid even moderate exposure to workplace hazards including
> the use of moving machinery and exposure to unprotected
> heights. The claimant is limited to simple, routine, and
> repetitive tasks and to a low-stress work environment defined
> as no fast-paced production rate or fast-paced work in general.

[R. 25, Finding 5.] Based on this RFC finding, at Step 4, the ALJ determined Plaintiff could

not perform his past relevant work as a machinist, ambulance driver, dispatch of

emergency room, or general office worker [R. 27, Finding 6]; but based on his age,

education, work experience, and RFC, there are jobs that exist in significant numbers in

the national economy that Plaintiff can perform. [R. 28–29, Finding 10.] On this basis, the

ALJ found Plaintiff has not been under a disability, as defined by the Act, from November 12, 2009, through the date of the decision.  [R. 29, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Council declined review.  [R. 1–7.]  Plaintiff filed this action for judicial review on June 8, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that remand is necessary because the ALJ improperly relied on the testimony of the vocational expert ("VE") that Plaintiff can perform other jobs that exist in significant numbers in the national economy without eliciting an explanation about conflicts in the VE's testimony with the Dictionary of Occupational Titles ("DOT").  [Doc. 19 at 18–23.]   The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and the ALJ properly relied on the VE's testimony which was consistent with the DOT. [Doc. 20 at 6–14.]   The Commissioner requests that this Court affirm the ALJ's decision that Plaintiff was not disabled.  [*Id*. at 15.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368

4

F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21

F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176,

1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a

10

combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).   To meet this burden, the

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3)

13

supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

**IV.    Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

**V.    Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects

16

of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.  Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

17

advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Step Five of the Sequential Process**

As noted previously, Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ improperly relied on the VE's testimony that Plaintiff could perform the jobs of surveillance system monitor, call out operator, and printed circuit board assembler without eliciting an explanation about conflicts in the VE's testimony with the DOT.  For the reasons explained herein, this Court finds the ALJ's decision that Plaintiff could perform the job of printed circuit board assembler is supported by substantial evidence.

> ### *Discussion*
>
> #### *Reasoning Level 3 Correlation with Simple, Routine, Repetitive Work*

Plaintiff does not challenge the ALJ's findings at Steps 1 through 4 of the sequential process.  Plaintiff does, however, challenge the ALJ's reliance at Step 5 on the VE's finding that Plaintiff could perform the jobs of surveillance system monitor and call out operator where those jobs require reasoning levels higher than that allowed by the ALJ's RFC limitation to simple, routine, and repetitive tasks.  [Doc. 19 at 19.]  According to Plaintiff,

> the "Definition Trailer" of the DOT job description for the surveillance system monitor (DOT 379.367-010) and call out operate (DOT 237.367-014) both show a "GED R3," that is, a reasoning level of 3. A reasoning level of 3 indicates that the

18

> job requires the person to be able to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT 1011 (4th ed. Rev. 1991)(copy attached). The uncontradicted finding of a limitation to simple, routine, repetitive tasks correlates with a reasoning level of 1. DICTIONARY OF OCCUPATIONAL TITLES p 1011 (attached).

[*Id.* at 19–20 (*footnote and attachments excluded*).]

The VE testified that, based on Plaintiff's RFC, he will be able to perform work that is sedentary with an SVP of 2, including the job of surveillance system monitor (DOT 379.367-010) and the job of call out operator (DOT 237.367-014). [R. 58–60.] As stated above, Plaintiff challenges the VE's finding that Plaintiff can perform the jobs of surveillance system monitor and call out operator which both require a reasoning level of 3 where Plaintiff has been limited to simple, routine, and repetitive work such that a reasoning level 3 job would be far beyond his ability.

The Fourth Circuit Court of Appeals has not spoken in a published decision on the issue of the correlation between the DOT reasoning levels and an RFC limiting a claimant to simple, routine, and repetitive work. The other circuits that have addressed the issue are split with some finding an apparent conflict between a job requiring reasoning level 3 and a claimant's limitation to simple work and others finding no apparent conflict. *See Weaver v. Colvin*, No. 1:10CV582, 2013 WL 3989561, at *11 n.13 (M.D.N.C. Aug. 2, 2013)

(*collecting cases*), *adopted*, 2013 WL 4768178 (M.D.N.C. Sept. 5, 2013).[6]  Likewise, district courts within the Fourth Circuit are split on the issue.  *See Id.*, at *11 n.14.

In the District of South Carolina, however, the court has repeatedly found that a limitation to simple or routine tasks conflicts with jobs requiring a GED reasoning level of 3 and that such a conflict must be addressed and resolved by the ALJ.  *See Phillips v. Astrue*, C/A No. 3:11-1085-MBS, 2013 WL 353604, at *2 (D.S.C. Jan.29, 2013) (holding that the Commissioner's position that the plaintiff, who was limited to "simple, one to two step tasks," which correlates with a reasoning level 1, could perform jobs with reasoning levels of 2 or 3 was not substantially justified); *Reid v. Astrue*, C/A No. 6:10-2118-MBS-KFM, 2012 WL 667164, at *12–13 (D.S.C. Feb. 8, 2012) (finding an apparent conflict between the plaintiff's ability to perform simple, routine, repetitive tasks and GED reasoning level 3), *adopted*, 2012 WL 663482 (D.S.C. Feb. 29, 2012); *Martin v. Astrue*, C/A No. 6:11-1572-TMC-KFM, 2012 WL 4479280, at *15–16 (D.S.C. July 27, 2012) (finding there was an unexplained potential conflict between GED reasoning levels 2 and 3 and the plaintiff's ability to perform no more than unskilled tasks with short, simple instructions), *adopted,* 2012 WL 4482943 (D.S.C. July 27, 2012); *see also Patterson v. Astrue*, C/A No. 8:07-1602-HFF-BHH, 2008 WL 2944616, at *5 (D.S.C. July 31, 2008) (noting the VE never expressly discussed whether plaintiff's inability to perform more than 1–2 step instructions was compatible with the position requiring at least a reasoning level of 2); *Tadlock v.*

---

[6] As the *Weaver* court stated, "compare *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding apparent conflict between job requiring reasoning level three and claimant's limitation to simple and routine work tasks) with *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding no conflict between job requiring reasoning level of three and claimant's limitation to simple work) *and Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no apparent conflict between job requiring reasoning level three and claimant's inability to do complex technical work). . . ."

20

*Astrue*, C/A No. 8:06-3610-RBH, 2008 WL 628591, at *9–10 (D.S.C. March 4, 2008) (remanding so that the VE could give testimony as to whether the plaintiff could perform the recommended jobs, which had a reasoning level of 2 or higher, considering the claimant's inability to do more than simple and routine work). In the instant case, because the VE did not address the conflict with respect to Plaintiff's ability to perform the jobs of surveillance system monitor and call out operator, both requiring a reasoning level 3, while Plaintiff was limited to simple, routine, and repetitive work, the Court finds that the ALJ improperly relied on the VE testimony with respect to these two jobs.

### *ALJ's Reliance on a Job that Requires Frequent Handling*

With respect to the job of touch-up screener or printed circuit board assembler (DOT 726.684-110[7]), Plaintiff argues that the U.S. Department of Labor, Selected Characteristics of Occupation ("SOC") explains that this job requires "frequent" handling. [Doc. 19 at 21; Doc. 21 at 6.] The ALJ found Plaintiff capable of performing sedentary work with certain exertional limitations including limiting the use of Plaintiff's upper extremities to operate push or pull controls to occasionally bilaterally. [R. 25.] Plaintiff argues that because he is limited to using his upper extremities to operate push or pull controls to occasionally bilaterally, then there is "a potential conflict between" the VE's testimony and the DOT and SOC. [Doc. 21 at 6.] He argues that the VE failed to explain how the job of printed circuit

---

[7] Inspects printed circuit board (PCB) assemblies for defects, such as missing or damaged components, loose connections, or defective solder: Examines PCB's under magnification lamp and compares boards to sample board to detect defects. Labels defects requiring extensive repairs, such as missing or misaligned parts, damaged components, and loose connections, and routes boards to repairer. Performs minor repairs, such as cleaning boards with freon to remove solder flux; trimming long leads, using wire cutter; removing excess solder from solder points (connections), using suction bulb or solder wick and soldering iron; or resoldering connections on PCB's where solder is insufficient. Maintains record of defects and repairs to indicate recurring production problems. May reposition and solder misaligned components. May measure clearances between board and connectors, using gauges. *See* Dictionary of Occupational Titles, http://www.occupationalinfo.org/72/726684110.html (last visited August 1, 2014).

board assembler, which requires "frequent" handling, is consistent with Plaintiff's limitation

of operating push or pull controls occasionally bilaterally with the upper extremities.

Therefore, Plaintiff contends the ALJ erred by not seeking an explanation from the VE

about this potential conflict. [*Id*.] The Court disagrees because there is no potential conflict

that needed explaining—handling is not the same as pushing or pulling.

"Handling" has been defined as requiring the ability to seize, hold, grasp, turn, or

otherwise working primarily with the whole hand or hands. *See* SSR 85-15. According to

SSR 96-9p,

> the ability to perform the full range of sedentary work requires
> the ability to lift no more than 10 pounds at a time and
> occasionally to lift or carry articles like docket files, ledgers,
> and small tools. Although a sedentary job is defined as one
> that involves sitting, a certain amount of walking and standing
> is often necessary in carrying out job duties. Jobs are
> sedentary if walking and standing are required occasionally
> and other sedentary criteria are met. "Occasionally" means
> occurring from very little up to one- third of the time, and would
> generally total no more than about 2 hours of an 8-hour
> workday. Sitting would generally total about 6 hours of an
> 8-hour workday. Unskilled sedentary work also involves other
> activities, classified as "nonexertional," such as capacities for
> seeing, manipulation, and understanding, remembering, and
> carrying out simple instructions.

SSR 96–9p, 1996 WL 374185, at *3 (July 2, 1996). With respect to manipulative

limitations, the SSR also provides that

> Most unskilled sedentary jobs require good use of both hands
> and the fingers; i.e., bilateral manual dexterity. Fine
> movements of small objects require use of the fingers; e.g., to
> pick or pinch. Most unskilled sedentary jobs require good use
> of the hands and fingers for repetitive hand-finger actions.
>
> Any significant manipulative limitation of an individual's ability
> to handle and work with small objects with both hands will
> result in a significant erosion of the unskilled sedentary

22

occupational base.   For example, example 1 in section 201.00(h) of appendix 2, describes an individual who has an impairment that prevents the performance of any sedentary occupations that require bilateral manual dexterity (i.e., "limits the individual to sedentary jobs which do not require bilateral manual dexterity"). When the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource.

The ability to feel the size, shape, temperature, or texture of an object by the fingertips is a function required in very few jobs and impairment of this ability would not, by itself, significantly erode the unskilled sedentary occupational base.

*Id*. at *8.

Upon review of the ALJ's decision, the Court notes the ALJ relied on the VE to determine the extent to which Plaintiff's limitations eroded the unskilled sedentary occupational base. [R. 28.] Given Plaintiff's RFC, the ALJ found Plaintiff could perform the job of printed circuit board assembler.   [*Id*.]   The ALJ failed to find any limitations whatsoever in Plaintiff's ability to handle, and Plaintiff has failed to direct to the Court to any support in the record for such limitation.   Moreover, Plaintiff has failed to explain how a limitation in the ability to push or pull diminishes or limits Plaintiff's ability to handle.   Thus, assuming Plaintiff is correct that the job of printed circuit board assembler requires "frequent" handling, the Court does not find that Plaintiff's limitation to occasional pushing or pulling with his upper extremities (necessarily involves strength) precludes his ability to "handle" frequently (necessarily involves holding, grasping, and working with hands).[8]   In fact, courts discuss as separate categories pushing and pulling versus handling and

---

[8] Plaintiff contends that Defendant concedes that the ability to reach, handle, or finger could conceivably affect the ability to operate push or pull controls, and the ALJ should have explored that issue with the VE. [Doc. 21 at 7.]  However, this Court agrees with Defendant that it does not follow that the opposite is true, i.e., a limitation in the ability to operate push or pull controls does not necessarily imply a limitation in fingering or handling.

fingering.  *See generally Thomas v. Astrue*, C/A No. 2:09-497-PMD, 2010 WL 2640181, at *3 (D.S.C. June 28, 2010) (explaining that a plaintiff could frequently handle and finger but should not push and pull); *Rollins v. Astrue*, C/A No. 8:08-2663-HMH-BHH, 2009 WL 5195287, at *5 (D.S.C. Dec. 22, 2009) (discussing ability to push and pull as separate from the ability to handle, finger, and feel); *see also Adams v. Astrue*, No. 3:07-cv-438-J-MCR, 2010 WL 3293344, at *7–8 (M.D. Fla. Aug. 19, 2010) (discussing the ability to push, pull and reach as being different from the ability to handle or finger).  Accordingly, the Court finds that there is no conflict between the SOC and the VE's testimony causing the ALJ to have needed to elicit an explanation, and the ALJ's determination regarding Plaintiff's ability to perform the job of printed circuit board assembler is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/ Jacquelyn D. Austin
United States Magistrate Judge

September 3, 2014
Greenville, South Carolina